## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HRI HOLDING CORP., *et al.*[1] | Case No. 19-12415 (MFW) |
| Debtors. | (Jointly Administered) |
| | Ref. Nos. 12, 63 & 145 |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO
(A) OBTAIN POST-PETITION FINANCING, (B) GRANT LIENS AND
SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS TO POST-PETITION
LENDERS AND (C) UTILIZE CASH COLLATERAL, (II) PROVIDING ADEQUATE
PROTECTION TO THE PRE-PETITION SECURED PARTIES,
(III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED
RELIEF, PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363, 364 AND 507**

Upon the motion ("**Motion**") of the Debtors in the above-captioned Chapter 11 cases

(collectively, "**Cases**"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3),

364(d), and 507(b) of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. ("**Bankruptcy**

**Code**") and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure

("**Bankruptcy Rules**") and Rule 2002-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy

Practice and Procedure ("**Local Rules**") of the United States Bankruptcy Court for the District of

Delaware (this "**Court**") seeking entry of an interim order (the "**Interim Order**") and a final

order (this "**Final Order**") granting the following relief:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: HRI Holding Corp. (4677), Houlihan's Restaurants, Inc. (8489), HDJG Corp. (3479), Red Steer, Inc. (2214), Sam Wilson's/Kansas, Inc. (5739), Darryl's of St. Louis County, Inc. (7177), Darryl's of Overland Park, Inc. (3015), Houlihan's of Ohio, Inc. (6410), HRI O'Fallon, Inc. (4539), Algonquin Houlihan's Restaurant, L.L.C. (0449), Geneva Houlihan's Restaurant, L.L.C. (3156), Hanley Station Houlihan's Restaurant, LLC (4948), Houlihan's Texas Holdings, Inc. (5485), Houlihan's Restaurants of Texas, Inc. (4948), JGIL Mill OP LLC (0741), JGIL Millburn, LLC (6071), JGIL Milburn Op LLC (N/A), JGIL, LLC (5485), JGIL Holding Corp. (N/A), JGIL Omaha, LLC (5485), HOP NJ NY, LLC (1106), HOP Farmingdale LLC (7273), HOP Cherry Hill LLC (5012), HOP Paramus LLC (5154), HOP Lawrenceville LLC (5239), HOP Brick LLC (4416), HOP Secaucus LLC (5946), HOP Heights LLC (6017), HOP Bayonne LLC (7185), HOP Fairfield LLC (8068), HOP Ramsey LLC (8657), HOP Bridgewater LLC (1005), HOP Parsippany LLC (1520), HOP Westbury LLC (2352), HOP Weehawken LLC (2571), HOP New Brunswick LLC (2637), HOP Holmdel LLC (2638), HOP Woodbridge LLC (8965), and Houlihan's of Chesterfield, Inc. (5073). The Debtors' corporate headquarters and the mailing address is 8700 State Line Road, Suite 100, Leawood, Kansas 66206.

{1247.002-W0059145.}

1.      authorization and approval for the Debtors to obtain up to $5,000,000 in post-petition financing (the "**DIP Facility**") pursuant to and in accordance with the terms and conditions of a certain Debtor-In-Possession Credit Agreement (a copy of which is attached hereto as **Exhibit 2**, and as it may be amended, modified, supplemented, extended, restated or replaced from time to time, the "**DIP Credit Agreement**"), substantially as filed with this Court, by and among the Debtors, as borrowers, CIT Bank, National Association, in its capacity as administrative agent and collateral agent, (in such capacity, "**DIP Agent**") and the financial institutions from time to time party thereto, as lenders, (collectively, including any financial institution that may issue letters of credit on behalf of any Debtor, "**DIP Lenders**" and together with the DIP Agent, the "**DIP Secured Parties**"), which may, inter alia, be used for the following purposes:

a)      for general operating and working capital purposes in accordance with the DIP Financing Documents and as limited by the Approved Budget (as defined below);

b)      for making adequate protection payments and other payments as provided in this Final Order; and

c)      for making payment of transaction expenses as well as fees, costs and other expenses as provided in this Final Order;

2.      approval of and authorization and direction for Debtors to (a) enter into, execute and perform under (i) the DIP Credit Agreement and (ii) all security agreements, pledge agreements, notes, guarantees, mortgages, deeds of trust, control agreements, Uniform Commercial Code financing statements, certificates, reports and other agreements, documents and instruments either or both executed and/or delivered with or to the DIP Agent and/or the DIP Lenders in connection with or related thereto (collectively, as amended, modified, supplemented, extended, restated or replaced from time to time, the "**DIP Financing Documents**") and (b) take

and perform all other acts and steps as may be required or contemplated by or in connection with the DIP Financing Documents and this Final Order;

3.         granting to the DIP Agent, for itself and on behalf of the DIP Lenders, first priority, priming, valid, perfected and enforceable Liens (as defined in section 101(37) of the Bankruptcy Code) in and upon all of the DIP Collateral (as defined below), subject only to the Carve-Out (as defined below) and any Senior Liens (as defined below), to secure all existing and future obligations and liabilities of every kind or nature (including without limitation bank products, reimbursement obligations in respect of letters of credit, and indemnity obligations) under or in connection with the DIP Financing Documents, whether due or to become due, absolute or contingent, (collectively, the "**Post-Petition Obligations**") as provided by and more fully defined in, the DIP Financing Documents;

4.         granting to the DIP Agent and the DIP Lenders allowed superpriority administrative expense claim status for the Post-Petition Obligations, subject only to the Carve-Out, in accordance with the terms of this Final Order;

5.         authorizing the Debtors' use in accordance with the terms of the DIP Financing Documents and as limited by the Approved Budget of "cash collateral" ("**Cash Collateral**") as such term is defined in section 363 of the Bankruptcy Code and shall include, without limitation, all cash and cash equivalents of the Debtors, whenever or wherever acquired, and the proceeds of all collateral pledged to the Pre-Petition Agent (as defined below) and to the DIP Agent, all in accordance with the terms set forth herein;

6.         granting adequate protection, including without limitation Adequate Protection Liens, First Lien Adequate Protection Claims, and First Lien Adequate Protection Payments (each as defined below) to the Pre-Petition Secured Parties (as defined below) all such adequate protection with the priority set forth in this Final Order and otherwise in accordance with the

terms set forth in this Final Order, with respect to the use and aggregate diminution (if any) in the value of their respective interests in the Pre-Petition Collateral (as defined below), including the Cash Collateral;

7.      approving the application of collections and proceeds of all of the Pre-Petition Collateral (as defined below) and DIP Collateral (as defined below), payment of any First Lien Adequate Protection Payments and Post-Petition Obligations in the manner and on the terms set forth in this Final Order;

8.      approving, subject to Section IX hereof, the waiver by the Debtors of (a) any right to surcharge the DIP Collateral and the Pre-petition Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code, (b) any rights under the "equities of the case" exception in section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral and the Pre-petition Collateral;

9.      modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Bankruptcy Rules 4001(a)(3);

10.     waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Final Order: and

11.     having held the Final Hearing (defined below) on the Motion for entry of this Final Order authorizing the post-petition financing and use of cash collateral contemplated hereby on a final basis and granting such other relief as is requested in the Motion and having approved the form of notice with respect to the Final Hearing; and notice of the Motion, the relief requested therein, and the Interim Hearing (as defined below) and the Final Hearing ("**Notice**") having been served by the Debtors in accordance with Bankruptcy Rule 4001(c) on: (i) the United States Trustee for the District of Delaware ("**U.S. Trustee**"); (ii) the Internal

Revenue Service and all taxing authorities of states in which the Debtors are doing business; (iii) counsel to the DIP Agent; (iv) the holders of the twenty (20) largest unsecured claims against the Estates; (v) all parties known to the Debtors who hold any liens or security interests in the Debtors' assets, including those parties who have filed UCC-1 financing statements against the Debtors, or who, to the Debtors' knowledge, have asserted any liens on any of the Debtors' assets; (vi) all landlords and warehouseman of the Debtors; (vii) all guarantors of the Pre-Petition Obligations; (viii) all creditors known to the Debtors to be holding a judgment against any of the Debtors; (ix) any governmental bodies holding a claim against the Debtors; (x) any other parties claiming an interest in the Pre-Petition Collateral; and (xi) all other parties entitled to receive notice pursuant to the Bankruptcy Rules and the Local Rules (collectively, the "**Noticed Parties**"); and the initial hearing on the Motion having been held by this Court on November 15, 2019 ("**Interim Hearing**") and the Final Hearing having been held on December 5, 2019 ("**Final Hearing**"); and based upon the record made by the Debtors at the Interim Hearing and the Final Hearing, including the Motion, the Declaration of Matthew R. Manning filed contemporaneously with the Motion (the "**First Day Declaration**"), the Declaration of Jean E. Hosty filed contemporaneously with the Motion (the "**Hosty Declaration**") and the filings and pleadings in the Cases, with all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled, and after due deliberation and consideration, and good and sufficient cause appearing therefor:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]

A.    <u>Petition</u>.  On November 14, 2019 ("**Petition Date**"), each Debtor filed a voluntary

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Any statements of this Court from the bench at the Interim Hearing or Final Hearing shall constitute additional findings

petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in the Chapter 11 cases.  On November 22, 2019, the U.S. Trustee appointed the official committee of unsecured creditors (the "**Committee**") in these Chapter 11 cases.

B.    Jurisdiction and Venue.  The Court has jurisdiction of these Cases, the Motion, this Final Order and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Notice.  The Final Hearing was held pursuant to the authorization of Bankruptcy Rule 4001 after notice was provided to the Notice Parties in accordance with Bankruptcy Rule 4001(b) and (c).

D.    Debtors' Acknowledgments and Agreements.  Without prejudice to the rights of certain non-Debtor parties specifically set forth in Section VIII below, the Debtors admit, stipulate, acknowledge, and agree that:

(1)    Pre-Petition Financing Documents.  Prior to the commencement of the Cases, the Pre-Petition Secured Parties made loans, advances and provided other financial accommodations to certain of the Debtors pursuant that certain Credit and Guaranty Agreement dated as of December 17, 2015 (the "**Pre-Petition Credit Agreement**"), among (1) HDJG MERGER CORP., a Delaware corporation; (2) HRI HOLDING CORP., a Delaware corporation, HOULIHAN'S RESTAURANTS, INC., a Virginia corporation, and each other Person listed on

---

of fact and conclusions of law as appropriate and are expressly incorporated by reference into the Interim Order or

Schedule A to the Pre-Petition Credit Agreement and joined thereto as a Borrower (together the "**Pre-Petition Borrowers**"); (3) HDJG CORP., a Delaware corporation and the other Guarantors (as defined in the Pre-Petition Credit Agreement), (4) the Lenders (as defined in the Pre-Petition Credit Agreement and further defined as the "**Pre-Petition Secured Parties**") from time to time party thereto, and (5) CIT BANK, N.A. (the "**Pre-Petition Agent**"), as Administrative Agent (as amended or modified, the "**Pre-Petition Credit Agreement**") (the Pre-Petition Credit Agreements and the Loan Documents (as defined in the Pre-Petition Credit Agreement), the "**Pre-Petition Financing Documents**").  The Pre-Petition Obligations (as defined below) shall be deemed to have been automatically accelerated on the Petition Date as a result of the commencement of the Cases in accordance with the terms of the Pre-Petition Financing Documents and all commitments of the Pre-Petition Secured Parties have been terminated provided that the Lenders (as defined in the Pre-Petition Credit Agreement) shall have no obligation to renew, extend, increase or issue any letters of credit except to the extent the Lenders (as defined in the Pre-Petition Credit Agreement) agree in writing to do so.

(2)    Pre-Petition Obligations.

a)    As of the Petition Date, the aggregate amount of all Obligations (as defined in the Pre-Petition Credit Agreement) owing by Pre-Petition Borrowers to the Pre-Petition Secured Parties under and in connection with the Pre-Petition Financing Documents was not less than (a) $44,583,642, plus interest accrued and accruing thereon at the rate in effect on the Petition Date, including (b) outstanding letters of credit in the aggregate amount of $1,824,569, plus (c) accrued and accruing fees, plus (d) all accrued and accruing costs and expenses (including attorneys' fees and legal expenses), plus (e) any other charges and liabilities accrued, accruing or chargeable, whether due or to become due, matured or contingent, under the

---

this Final Order to the extent not inconsistent herewith.

Pre-Petition Credit Agreement (collectively, "**Pre-Petition Obligations**"). Without limiting the foregoing, the Pre-Petition Obligations shall include all indemnification obligations of Borrowers and Guarantors to the Pre-Petition Secured Parties arising under the Pre-Petition Financing Documents, including without limitation the indemnitee and other protections provided to indemnitees under the obligations arising under the Pre-Petition Credit Agreement, which survive payment in full of the Pre-Petition Obligations.

b)    The Pre-Petition Obligations constitute allowed, legal, valid, binding, enforceable, and non-avoidable obligations of Pre-Petition Borrowers, and are not subject to any offset, deduction, defense, counterclaim, avoidance, recovery, recharacterization, or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtors do not possess and shall not assert any claim, counterclaim, setoff, deduction, or defense of any kind, nature or description, which would in any way impair, reduce, or affect the validity, enforceability, and non-avoidability of any of the Pre-Petition Obligations.

(3)    Pre-Petition Collateral (for Pre-Petition Obligations).

a)    As of the Petition Date, the Pre-Petition Obligations were secured pursuant to the Pre-Petition Financing Documents by valid, binding, perfected, enforceable and non-avoidable first priority security interests and liens ("**Pre-Petition Credit Liens**") granted by Borrower to the Pre-Petition Agent, for the benefit of itself and the Pre-Petition Lenders, upon the Collateral (as defined in the Pre-Petition Credit Agreement, hereafter "**Pre-Petition Collateral**"), subject only to any valid, perfected and unavoidable lien or security interest otherwise existing as of the Petition Date, which are acknowledged to be senior in priority under the Pre-Petition Credit Agreement (collectively, "**Prior Permitted Liens**" and each a "**Prior Permitted Lien**"). The Prior Permitted Liens together with (i) any valid, perfected, and unavoidable lien or security interest otherwise existing as of the Petition Date, which is senior in

priority to the liens granted to the Pre-Petition Secured Parties in the Pre-Petition Collateral, and (ii) any valid and unavoidable lien or security interest, which is senior in priority to the liens granted to the Pre-Petition Secured Parties in the Pre-Petition Collateral that is validly perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b), shall be collectively referred to in this Final Order as "**Senior Liens**".

        b)     The Pre-Petition Agent, on behalf of the Pre-Petition Lenders, has a valid, binding and perfected nonavoidable and first priority security interest and lien in all of the Cash Collateral, including all amounts on deposit in all of Debtors' banking, checking or other deposit accounts with each of the Pre-Petition Secured Parties, whether as original collateral or proceeds of other Pre-Petition Collateral, and all such Cash Collateral is part of the Pre-Petition Collateral.

        c)     The Debtors do not possess and will not assert any claim, counterclaim, setoff, deduction, or defense of any kind, nature or description that would in any way impair, reduce, or affect the validity, enforceability and non-avoidability of any of the Pre-Petition Secured Parties' liens, claims or security interests in the Pre-Petition Collateral, which liens and security interests are not subject to subordination or avoidance pursuant to the Bankruptcy Code or any other applicable law.

        E.     <u>Adequate Protection</u>.

        (1)     <u>Adequate Protection Obligations</u>. The Debtors acknowledge and agree that the Pre-Petition Secured Parties are entitled to and being provided with adequate protection resulting from (1) the provisions of this Final Order granting either or both first priority and priming liens on the Pre-Petition Collateral to the DIP Agent, for the benefit of the DIP Lenders, with respect to the DIP Facility, (2) use of the Cash Collateral, (3) use, sale, lease, decrease, or depreciation or other diminution in value of the Pre-Petition Collateral (4) the subordination to

the Carve-Out, and (5) the imposition of the automatic stay under Bankruptcy Code section 362(a) or otherwise pursuant to Bankruptcy Code sections 361(a), 363(c), 364(c), and 364(d)(1); and

(2)    The amount of the aggregate diminution in value in the Pre-Petition Secured Parties' respective interests in the Pre-Petition Collateral (if any) resulting from (1) the provisions of this Final Order granting first priority and priming liens on the Pre-Petition Collateral to the DIP Agent, for the benefit of the DIP Lenders, (2) use of Cash Collateral, (3) use, sale, lease, decrease or depreciation or other diminution in value of the Pre-Petition Collateral, and (4) the imposition of the automatic stay under Bankruptcy Code section 362(a) or otherwise pursuant to Bankruptcy Code sections 361(a), 363(c), 364(c), and 364(d)(1) is collectively referred to in this Final Order as "**Adequate Protection Obligations**". In exchange for such adequate protection, the Pre-Petition Secured Parties agreed to the Debtors' use of Cash Collateral on the terms set forth in this Final Order and to the imposition of the Carve-Out as set forth herein.

(3)    <u>Necessity for Adequate Protection</u>. The adequate protection and other treatment agreed to be provided by the Debtors pursuant to Section IV below of this Final Order are authorized by the Bankruptcy Code, will minimize disputes and litigation over use of the Cash Collateral, is consistent with the Debtors' need for a DIP Facility and will facilitate the Debtors' ability to continue their business operations.

F.    <u>Prior Liens</u>.  Nothing herein contained is intended to (1) subordinate, invalidate, negate, avoid, or prejudice the holders of Senior Liens, (2) find or rule that any Senior Liens (or any other liens, excepting only the liens of the Pre-Petition Agent in the Pre-Petition Collateral, subject only to Section VIII below) are valid, binding, perfected, enforceable, non-avoidable or senior, or (3) prejudice the right of any party-in-interest, including without limitation the

Debtors, the Committee, the Pre-Petition Agent, or DIP Agent, from challenging the validity, enforceability, perfection, extent or priority of any Senior Lien (or any other liens, excepting only the liens of the Pre-Petition Agent in the Pre-Petition Collateral subject only to Section VIII below).

G.    Findings Regarding the Post-Petition Financing.

(1)    Request for Post-Petition Financing.  Debtors have requested from the DIP Agent and the DIP Lenders, and the DIP Agent and the DIP Lenders are willing to extend, certain loans, advances, and other financial accommodations, as more particularly described, and subject to the terms and conditions set forth, in this Final Order and the DIP Financing Documents.

(2)    Need for Post-Petition Financing.  The Debtors do not have sufficient available sources of working capital to operate the Debtors' businesses in the ordinary course without the DIP Facility and the ability to use Cash Collateral as described in this Final Order. The Debtors' ability to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and to otherwise fund their operations is essential to the viability of the Cases.  The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed DIP Facility and the use of Cash Collateral on the terms set forth in the DIP Financing Documents and this Final Order is vital to the preservation and maximization of the going-concern value of one or more of the Debtors' currently operating businesses pending sale(s) of the Debtors' assets.  Additionally, the liquidity provided under the DIP Financing Documents is necessary for Debtors to maintain operations and to satisfy the Milestones in respect of an Acceptable Sale Process in accordance with the DIP Credit Agreement through the implementation of the Bidding Procedures in respect of a sale of all or substantially all of the Debtors' assets or the equity interests in the DIP Borrower through a

public auction or private process whereby the Pre-Petition Agent and the DIP Agent shall have the right to credit bid (subject to Section VIII below), in their respective sole and absolute discretion (independently or together), up to the full amount of the Pre-petition Obligations and the DIP Obligations.  Accordingly, the Debtors have an immediate need to obtain funds from the DIP Facility and authorization to use Cash Collateral for the purposes set forth herein to, among other things, permit the orderly operation of their business, support a process for a going concern sale of their business, minimize disruption of their business operations, and manage and preserve the assets of the Debtors' bankruptcy estates (as defined under Bankruptcy Code section 541, the "**Estates**") to maximize the recoveries to creditors of the Estates.

(3)    No Credit Available on More Favorable Terms.  Consistent with the First Day Declaration and the Hosty Declaration, the Debtors are unable to procure financing in the form of unsecured credit allowable under Bankruptcy Code section 503(b)(1), as an administrative expense under Bankruptcy Code section 364(a) or (b), or in exchange for the grant of an administrative expense priority pursuant to Bankruptcy Code section 364(c)(1), without the grant of liens on all or substantially all of Debtors' assets pursuant to Bankruptcy Code sections 364(c) and (d).  Debtors have been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Agent and the DIP Lenders pursuant to the DIP Financing Documents and this Final Order.

(4)    Budget.  Based upon the record presented to this Court by the Debtors, (a) Debtors have prepared and delivered the Budget (as defined in the DIP Credit Agreement (a copy of such Budget being annexed hereto as **Exhibit 1** (the "**Approved Budget**")), (b) the Budget has been thoroughly reviewed by the Debtors and their management and (c) the Budget sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby.  The Debtors believe in good faith that the Budget is achievable and will allow

the Debtors to operate in Chapter 11 without the accrual of unpaid administrative expenses during the term of the Budget.  The Pre-Petition Secured Parties and the DIP Secured Parties are relying upon the Debtors' compliance with the Budget in determining to consent to the use of Cash Collateral for the limited purposes expressly set forth herein and to enter into (or as the case may be, consent to) the DIP Facility provided for herein.

(5)     <u>Business Judgment and Good Faith Pursuant to Section 364(e) and Section 363 (m)</u>.  Based on the record before this Court, including the Debtors' stipulations, (a) the Debtors and each of the Pre-Petition Secured Parties and the DIP Secured Parties have negotiated at arms' length and in good faith regarding the terms of the DIP Financing Documents, the DIP Facility, and the Debtors' use of Cash Collateral, respectively, all subject to the terms of this Final Order and (b) the terms of the DIP Credit Agreement, the other DIP Financing Documents and the DIP Facility are fair and reasonable, reflect Borrower's and Guarantors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration. Any credit extended under the terms of this Final Order shall be deemed to have been extended in "good faith" (as that term is used in Bankruptcy Code sections 364(e) and 363(m)) by the Pre-Petition Secured Parties and the DIP Lenders.

(6)     <u>No Objection</u>.  The Pre-Petition Secured Parties have no objection to the DIP Facility and the use of Cash Collateral on the terms and conditions set forth in this Final Order.  Nothing in this Final Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Pre-Petition Secured Parties are or will be adequately protected with respect to any non-consensual use of Cash Collateral.

(7)     <u>Good Cause</u>.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors and the Estates, as its

implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' efforts for the orderly operation of their business and to facilitate a going-concern sale process for the businesses, (b) preserve and maximize the value of the Estates, and (c) avoid immediate and irreparable harm to the Debtors, their respective businesses, employees, and assets.

(8)     <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(c)(2).  No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Final Order, or any objections that were made (to the extent such objections have not been resolved or withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

**I.     <u>Authorization and Terms of Financing</u>.**

A.     <u>Motion Granted</u>.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) under the terms and conditions provided in this Final Order.

B.     <u>Authorization to Borrow</u>.  The Debtors are hereby authorized to immediately borrow funds in accordance with the terms of the DIP Credit Agreement and the Approved Budget and to incur indebtedness and obligations owing to the DIP Agent and the DIP Lenders on the terms and subject to the conditions (including without limitation borrowing formulae, sublimits and availability restrictions) set forth in the DIP Financing Documents and this Final Order up to the maximum amount of $5,000,000, subject, as applicable, to the Approved Budget (with any variances permitted thereto under the terms and conditions of the DIP Credit Agreement).

C.    Financing Documents.

(1)    Authorization.    The Debtors are hereby authorized to (a) enter into, execute, deliver, perform, and comply with all of the terms, conditions, and covenants of the DIP Financing Documents, including without limitation, the DIP Credit Agreement, and all security and pledge agreements, (b) execute and deliver all certificates, reports, statements and other agreements and documents required or contemplated by the DIP Financing Documents (including without limitation documents required for the Debtors' performance of their obligations under the DIP Financing Documents and creation and perfection of liens granted or contemplated therein), and (c) pay all obligations incurred under or described in (whether principal, interest, fees, costs, expenses, indemnities or otherwise) and perform all other undertakings and acts required or contemplated by the DIP Financing Documents.

(2)    Approval of DIP Facility.    The DIP Facility is approved subject to the terms and provisions of the DIP Financing Documents and this Final Order.

(3)    Amendment of DIP Financing Documents.    The Debtors, the DIP Agent, and the DIP Lenders are hereby authorized to approve and implement, in accordance with the terms of the DIP Financing Documents, any modification of the DIP Financing Documents; provided, however, that any material modification or amendment to the DIP Financing Documents shall be subject to providing notice of such material modification or amendment to counsel to the Committee and the U.S. Trustee each of whom shall have five (5) business days from the date of such notice within which to object in writing to such modification or amendment unless the Committee and U.S. Trustee agree in writing to a shorter period, which modification shall be filed with this Court.  Unless the Committee or the U.S. Trustee timely objects to any material modification or amendment to the DIP Financing Documents, then such modification or amendment shall become effective upon the expiration of the aforementioned

notice period. If a timely objection is interposed, this Court shall resolve such objection prior to such modification or amendment becoming effective.

(4)    Budget Maintenance.    The use of extensions of credit under the DIP Facility shall be in accordance with the Approved Budget, subject to the Permitted Variances (as defined in the DIP Credit Agreement) and as provided in Section 6.17 of the DIP Credit Agreement.  The Budget shall be updated by the Debtors no less frequently than every two (2) weeks in accordance with the terms and provisions of the DIP Credit Agreement.  A copy of any updated Approved Budget shall be filed with this Court within one (1) Business Day after it has been approved by the DIP Agent.  Copies of all reports and other information required to be provided by the Debtors to the DIP Agent in accordance with Section 6.02 of the DIP Credit Agreement shall be provided to the Committee.

(5)    Application of DIP Facility Proceeds.    The advances under the DIP Facility (the "**Advances**") shall be used in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with and as may be limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), solely as follows:

a)    to pay fees, costs, and expenses as provided in the DIP Financing Documents, including amounts incurred in connection with the preparation, negotiation, execution and delivery of the DIP Credit Agreement and the other DIP Financing Documents;

b)    for general operating and working capital purposes, for the payment of fees, expenses, and costs incurred in connection with the Cases, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof for working capital, and other lawful corporate purposes of the Debtors;

c)    for making other payments as provided in this Final Order; and

d)        to fund the Carve-Out Reserve Account (as defined below).

(6)    <u>Conditions Precedent</u>.  The DIP Lenders shall have no obligation to make any loan or advance (or issue any letter of credit) under the DIP Credit Agreement unless the conditions precedent to make such loan or extension of credit under the DIP Credit Agreement have been satisfied in full or waived in accordance with the DIP Credit Agreement.

D.    <u>Payments and Application of Payments</u>.  The Debtors are authorized to make all payments and transfers of the Estates' property to the DIP Agent and the DIP Lenders as provided, permitted or required under the DIP Financing Documents and this Final Order, which payments and transfers shall not be avoidable or recoverable from the DIP Lenders under Bankruptcy Code section 547, 548, 550, 553, or any other section thereof, or be subject to any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law, or otherwise.  Without limiting the generality of the foregoing, Debtors are authorized and directed, without further order of this Court, to (i) pay all principal, interest, fees and indemnities, when due, under the DIP Financing Documents and (ii) pay or reimburse the DIP Agent and the DIP Lenders, in accordance with the DIP Financing Documents, for all present and future costs and expenses, including, without limitation, all reasonable and documented professional fees, consultant fees, and legal fees and expenses paid or incurred by the DIP Agent and the DIP Lenders in connection with the financing transactions as provided in the DIP Financing Documents and this Final Order, regardless of whether such amounts are in the Budget, all of which shall be and are included as part of the principal amount of the Obligations (as defined in the DIP Credit Agreement) under the DIP Financing Documents and secured by the DIP Collateral (as defined below); provided that DIP Agent shall send a redacted summary invoice of such fees and expenses (subject in all respects to applicable privilege or work product doctrines) to Debtors, the U.S. Trustee and, the Committee or its counsel and such

invoices shall be promptly paid by Debtors if no objection has been raised within ten (10) days, and to the extent there is an objection, this Court may resolve the objection.

E.    <u>Interest and Fees</u>.  The rate(s) of interest to be charged for borrowings under the DIP Facility pursuant to the DIP Credit Agreement shall be the rates set forth in the DIP Credit Agreement and shall be calculated in the manner and payable at the times set forth in the DIP Credit Agreement.  The fees charged under the DIP Facility shall be those set forth in the DIP Credit Agreement and shall be unconditionally payable in the amounts and at the times set forth in the DIP Credit Agreement, including without limitation the Closing Fee, which is absolutely and unconditionally earned upon execution of the DIP Credit Agreement, and shall be non-refundable.

F.    <u>Application of Collections</u>.  All cash, collections, and proceeds of the Pre-petition Collateral and DIP Collateral, including all proceeds realized in connection with any and all asset sales, shall be paid to the DIP Agent for application in reduction of the Post-Petition Obligations in accordance with the terms of the DIP Financing Documents and this Final Order, in such order and manner determined by the DIP Agent, including, without limitation, applying all payments, proceeds and other amounts to the Post-Petition Obligations in the DIP Agent's sole and absolute discretion.

G.    <u>Continuation of Pre-petition Procedures</u>.    All pre-petition practices and procedures for the payment and collection of proceeds of Pre-Petition Collateral and DIP Collateral, as applicable, the turnover of cash, the delivery of property to the Pre-Petition Secured Parties, and the funding pursuant to the Pre-Petition Credit Agreement, including use of any lockbox or blocked depository bank account arrangements, will be unchanged, remain in place and be identical under the DIP Financing Documents for the benefit of the DIP Agent and the DIP Lenders and are hereby approved and shall continue without interruption after the

commencement of the Cases, provided that the practices and procedures are otherwise consistent with the terms of the Order approving the *Motion of the Debtors for Entry of Interim and Final Orders (A) Authorizing the Maintenance of Bank Accounts and Continued Use of Existing Business Forms and Checks, (B) Authorizing the Continued Use of Existing Cash Management System and (C) Granting Limited Relief from the Requirements of Bankruptcy Code Section 345(b) and the United States Trustee Operating Guidelines*.

## II.   <u>Collateralization and Superpriority Administrative Claim Status</u>.

A.   <u>Collateralization</u>.

(1)   <u>DIP Lien Grant</u>.  To secure the prompt payment and performance of any and all Post-Petition Obligations of Borrower and Guarantors to the DIP Agent and the DIP Lenders of whatever kind, nature, or description, absolute or contingent, now existing or hereafter arising, the DIP Agent, for the benefit of itself and the DIP Lenders, shall have and is hereby granted, to the extent permitted by applicable law effective nunc pro tunc as of the Petition Date, valid, binding, enforceable, continuing, non-avoidable and perfected first priority (subject only to any Senior Liens and the Carve-Out), security interests and liens in and upon (such security interests and liens collectively, "**<u>DIP Liens</u>**") all property and rights and interests in property of each of the Debtors of any kind or nature whatsoever in existence as of the Petition Date as well as thereafter created or acquired, and wherever located, including without limitation, (a) all Pre-Petition Collateral, (b) all accounts and accounts receivable, inventory, chattel paper, equipment, fixtures, machinery, commercial tort claims, deposit accounts, instruments, documents, cash and cash equivalents, investment property (including without limitation all equity interests in subsidiaries), books and records, patents, trademarks, trade names, copyrights, rights under license agreements and all other intellectual property, rights, rebates, refunds and other claims under and with respect to insurance policies, tax refunds,

deposits, rebates, contract rights and other general intangibles, software, letter of credit rights, money and inter-company claims or receivables (whether or not evidenced by notes) at any time owing to each Debtor, (c) all real property, leaseholds, rents and profits and proceeds thereof; (provided, however, that as to a lien on all fee, leasehold, and other real property interests and the proceeds thereof: (i) with respect to non-residential real property leases, no liens or encumbrances shall be granted or extended to such leases under this Final Order, except as permitted by the applicable lease or pursuant to applicable law, but if any such restriction applies, liens shall then be deemed to extend only to the economic value of proceeds of any sale or other disposition of, and any other proceeds or products of, such leasehold interests; and (ii) should any DIP Lender's internal regulatory or compliance requirements require the completion of either or both flood due diligence and obtaining evidence of applicable flood insurance with respect to any real property or leasehold interest, then until completion of such flood due diligence, the DIP Agent shall be deemed to have obtained a lien only on the economic value of, proceeds of any sale or other disposition of such real property interests), (d) if not otherwise described, all of the property or rights in property identified as Collateral (as defined in the Pre-Petition Credit Agreement, and the DIP Credit Agreement), (e) (i) all causes of action (other than Avoidance Actions, as defined below) whether pursuant to federal or applicable state law, and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise, and (ii) the proceeds of all claims and causes of action under Chapter 5 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**") of the Debtors or the Estates, and (f) as to all of the foregoing, all rents, issues, products, proceeds (including insurance policies and profits of, from, or generated by any of the foregoing (all of the foregoing being sometimes collectively referred to in this Final Order as "**DIP Collateral**").

(2)    Subject, in each instance, to the Carve-Out, and to the extent permitted by applicable law, the DIP Liens shall be:

a)    <u>Liens on Unencumbered Assets</u>. Pursuant to Bankruptcy Code section 364(c)(2), continuing valid, perfected, enforceable, first priority, and fully perfected liens on and security interests in all of the Debtors' right, title, and interest in, to, and under all DIP Collateral that is not otherwise encumbered by a validly perfected security interest or lien as of the Petition Date ("**Unencumbered Property**").

b)    <u>Liens on Encumbered Assets</u>. Pursuant to Bankruptcy Code section 364(c)(3), a continuing valid, enforceable, second priority, and fully perfected lien on and security interest (other than as set forth in clause (c) below) in all of the Debtors' right, title, and interest in, to, and under all DIP Collateral which is subject to, as of the Petition Date, a Senior Lien.

c)    <u>Priming Liens on Encumbered Assets</u>.  Subject to any applicable Senior Liens, pursuant to Bankruptcy Code section 364(d), valid, enforceable, and fully perfected first priority senior priming security interests in and senior priming liens upon all of the Debtors' right, title, and interest in, to, and under all DIP Collateral, including, without limitation, priming security interests and priming liens which are senior to (i) the security interests and liens held by the Pre-Petition Agent, on behalf of the Pre-Petition Secured Parties; and (ii) the Adequate Protection Liens (as defined below).

d)    <u>Liens Senior to Certain Other Liens</u>.  Notwithstanding anything to the contrary contained in this Final Order, except for the last paragraph of Section VIII with respect to the First Lien Adequate Protection Liens (as defined below), the DIP Liens and the First Lien Adequate Protection Liens shall not be subject or subordinate to (i) Bankruptcy Code sections 510, 549, or 550; (ii) any lien or security interest that is avoided or preserved for the

benefit of the Debtors or the Estates under Bankruptcy Code section 551 or (iii) any intercompany or affiliate liens of the Debtors.

(3)     Post-Petition Lien Perfection.  This Final Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) holding any deposit account of Debtors (a "**Perfection Act**").  Notwithstanding the foregoing, if the DIP Agent, the Pre-Petition Agent (on account of its First Lien Adequate Protection Liens) shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, each of the DIP Agent and the Pre-Petition Agent is authorized to perform such act, and Debtors are authorized to perform such acts to the extent necessary or required by the DIP Agent, the Pre-Petition Agent which act or acts shall be deemed to have been accomplished as of the Petition Date notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  The DIP Agent, the Pre-Petition Agent may choose to file, record or present a certified copy of this Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Final Order in accordance with applicable law.  Should the DIP Agent, and/or the Pre-Petition Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the DIP Liens, the First Lien Adequate

Protection Liens or the Second Lien Adequate Protection Liens granted herein by virtue of the entry of this Final Order.

      B.     <u>Superpriority Administrative Expense</u>.

      (1)     For all Post-Petition Obligations, whether now existing or hereafter arising, subject only to the Carve-Out, the DIP Agent, for the benefit of itself and the DIP Lenders, is granted an allowed superpriority administrative expense claim of the Estates pursuant to Bankruptcy Code section 364(c)(1), having priority in right of payment over any and all other obligations, liabilities, and indebtedness of any of such Debtors, whether now in existence or hereafter incurred by any of such Debtors of every kind or nature, including any and all unsecured claims, administrative expenses, adequate protection claims, priority claims or any other claims of the kind specified in, or ordered pursuant to, the Bankruptcy Code, including without limitation, *inter alia*, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 507, 364(c)(1), 546(c), 726 or 1114 and, sections 506(c) and 552(b) (the "**DIP Superpriority Claim**").

      (2)     Other than the Carve-Out, (a) no costs or expenses of administration, including without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Cases, and (b) no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Superpriority Claim or the Post-Petition Obligations or with any other claims of the DIP Lenders arising hereunder.

**III.**     <u>**Authorization to Use Cash Collateral.**</u>  Subject to the terms and conditions of this Final Order, pursuant to Bankruptcy Code section 363(c)(2), the Debtors are authorized to use Cash Collateral in accordance with the DIP Financing Documents and as may be limited by the Approved Budget (subject to variances permitted under the terms and conditions of the DIP

Credit Agreement).  Except for the sale of inventory in the ordinary course of Debtors' business or as may be otherwise expressly permitted herein, or in any agency arrangement between Debtors and a third party in connection with the liquidation of the DIP Collateral approved in writing by DIP Agent and Pre-Petition Agent, nothing in this Final Order shall be deemed to authorize the use, sale, lease, encumbrance, or disposition of any assets of the Debtors or the Estates or the use of any Cash Collateral or other proceeds resulting therefrom.

IV.    **Adequate Protection for Pre-Petition Secured Parties.**  As adequate protection for the interests of the Pre-Petition Agent, for the benefit of itself and the Pre-Petition Lenders, on account of the Adequate Protection Obligations owed to the Pre-Petition Secured Parties (the "**First Lien Adequate Protection Obligations**"), the Pre-Petition Agent is being provided with adequate protection (collectively, "**First Lien Adequate Protection**") to the extent of any diminution in value of the Pre-Petition Collateral as determined by this Court or as agreed among the Pre-Petition Lenders, the Debtors and the Committee.  Nothing in this Final Order constitutes a pre-determination regarding what constitutes a diminution in value or a finding that there has been a diminution in value. The First Lien Adequate Protection Obligations are subject to a final determination by the Court, and the rights of all parties in interest as to such determination are reserved.

A.    First Lien Adequate Protection Liens.  Until the indefeasible discharge of the Pre-Petition Obligations, the Pre-Petition Agent, for itself and for the benefit of the Pre-Petition Lenders, is hereby granted valid, binding, enforceable and perfected replacement and additional security interests in and liens ("**First Lien Adequate Protection Liens**") on all the Debtors' right, title, and interest in and to the DIP Collateral to the extent of the First Lien Adequate Protection Obligations, which liens shall be junior in all respects only to the DIP Liens, the Senior Liens and the Carve Out.

(1)     The First Lien Adequate Protection Liens shall be deemed to be fully perfected as of the Petition Date and, subject to Section VIII below, not subject to subordination or avoidance for any cause or purpose in the Cases.

(2)     Except for the DIP Liens, the Senior Liens, and the Carve Out, and subject to Section IX and the last paragraph of Section VIII, the First Lien Adequate Protection Liens (i) shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases (unless with the consent of the Pre-Petition Secured Parties); (ii) shall not be subject to Bankruptcy Code sections 506(c), 510, 549, or 550; and (iii) no lien or interest avoided and preserved for the benefit of any Estate pursuant to Bankruptcy Code section 551 shall be made *pari passu* with or senior to the First Lien Adequate Protection Liens.

B.     <u>First Lien Adequate Protection Claims</u>.  As further adequate protection, to the extent that the First Lien Adequate Protection Liens do not adequately protect the diminution in value of the Pre-Petition Agent's interest in the Pre-Petition Collateral, the Pre-Petition Agent, for the benefit of the Pre-Petition Lenders, is hereby granted an allowed superpriority administrative expense claim ("**First Lien Adequate Protection Claim**") against the Estates under Bankruptcy Code sections 503 and 507(b), which shall, subject only to the DIP Superpriority Claim and the Carve-Out, have priority over all other administrative expense claims, priority claims and unsecured claims against the Debtors or the Estates, which are now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses and priority or other claims of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 and 1114.

C.     <u>First Lien Adequate Protection Payments</u>.

(1)      As further adequate protection, the Pre-Petition Agent, for the benefit of the Pre-Petition Lenders, shall be entitled to interest on account of the outstanding Pre-Petition Obligations at the default rate set forth in the Pre-Petition Financing Documents, which was in effect as of the Petition Date and which shall accrue in the manner set forth in the Pre-Petition Financing Documents, *provided, however*, that (i) if the Court determines at any time by final, non-appealable order that the Pre-Petition Secured Parties are not entitled to receive all or a portion of such payments on account of interest due under the Pre-Petition Claim Documents under Bankruptcy Code section 506(b) or otherwise, such amounts paid to the Pre-Petition Agent will instead be deemed recharacterized as repayments of principal in reduction of the Pre-Petition Claim, and (ii) any cash payments to the Pre-Petition Secured Parties shall be subject to disgorgement solely in the event of the entry by the Court of a final, non-appealable order sustaining a timely challenge made pursuant to Section VIII below that determines that such payment was not from or on account of the Pre-Petition Collateral and Pre-Petition Obligations of the Pre-Petition Secured Parties.

(2)      As further adequate protection, and without limiting any rights of the Pre-Petition Agent, for the benefit of the Pre-Petition Lenders, under Bankruptcy Code section 506(b) which are hereby preserved, the Debtors shall pay or reimburse the Pre-Petition Agent and the Pre-Petition Lenders ("**First Lien Adequate Protection Payments**") for any and all of its reasonable fees, costs, expenses and charges accrued and payable under the Pre-Petition Financing Documents, including, without limitation, the fees and expenses of the Pre-Petition Agent as provided in Section 12.05 of the Pre-Petition Credit Agreement, whether accrued and unpaid pre-petition or accrued and unpaid post-petition, all without further notice, motion or application to, order of, or hearing before, this Court.  Upon submission by the Pre-Petition Agent of a redacted summary invoice (subject in all respects to applicable privilege or work

product doctrines) to the Debtors, the U.S. Trustee and counsel for the Committee, with no objection having been raised within ten (10) days, the Debtors shall be authorized to pay such invoices.  To the extent there is an objection, this Court may resolve the objection. Such written invoices shall include the invoices of (i) Katten Muchin Rosenman LLP, counsel to the Pre-Petition Agent, and (ii) any other professional, advisor, or agent reasonably retained by the Pre-Petition Agent or its counsel in connection with the Pre-Petition Financing Documents pursuant to the Cases; provided that none of such fees and expenses as adequate protection payments hereunder shall be subject to approval by this Court or the United States Trustee Guidelines unless an objection is interposed and cannot be resolved by the parties.  No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.  Any and all fees charged under the Pre-Petition Financing Documents shall be as set forth in the Pre-Petition Financing Documents and shall be payable at the times set forth in the Pre-Petition Financing Documents.

## V.    **Carve Out.**

A.    <u>Carve-Out</u>.  The DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, and First Lien Adequate Protection Claims, and any other liens or claims granted by the Interim Order or this Final Order shall be subject only to the right of payment and priority of the following expenses (collectively, the "**Carve-Out**"), to the extent provided herein:

(1)    the allowed administrative expenses pursuant to 28 U.S.C. § 1930 for fees payable to the U.S. Trustee or to this Court, unless otherwise ordered by this Court; and

(2)    the allowed fees and expenses actually incurred by persons or firms retained by the Debtors or the Committee whose retention is approved by the Bankruptcy Court pursuant to section 327, 328, 363, or 1103 of the Bankruptcy Code (each a "**Professional**" and collectively, the "**Professionals**") in a cumulative, aggregate sum of (i) for the period prior to the

occurrence of the delivery of a Carve-Out Trigger Notice (as defined below), an amount not to exceed the lesser of (A) the aggregate weekly amounts budgeted to be funded in advance for each such Professional for such week in accordance with the Approved Budget (to the extent a Carve-Out Trigger Notice is delivered mid-week, pro-rated for such week) and (B) the actual amount of such Allowed Professional Fees for each Professional incurred on or after the Petition Date up through and including the date a Carve-Out Trigger Notice is delivered ("**Allowed Professional Fees**"), subject in all respects to the terms of the Interim Order, this Final Order, and any other interim or other compensation order entered by the Bankruptcy Court (the "**Interim Compensation Procedures**").  The Carve-Out shall include all Allowed Professional Fees that are incurred or earned (i) at any time before delivery of a Carve-Out Trigger Notice, whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice, subject and limited in all respects to the amounts set forth in the Approved Budget for payment of such Professionals; and (ii) beginning the first day after the delivery by the DIP Agent of written notice (which for the avoidance of doubt may be by electronic mail) of the occurrence of an Event of Default (the "**Carve-Out Trigger Notice**") to the Debtors, the Debtors' counsel, and counsel for the Committee, the fees and expenses incurred by the Professionals retained by the Debtors and the Committee in an aggregate amount not to exceed $75,000 (the "**Post-EOD Carve-Out Amount**") (the aggregate amount of clauses (1) and (2), collectively, the "**Carve-Out Cap**"); *provided*, *however* the Carve-Out shall not include any bonus, sale transaction fees, success fees, completion fees, substantial contribution fees, or any other fees of similar import of any of the Professionals.  Notwithstanding the foregoing, the Carve-Out Trigger Notice shall be deemed to have been delivered to the required notice parties on the Termination Date.

(3)    Subject to the terms of this Final Order, the Carve-Out Cap shall be

allocated on a Professional by Professional basis based on the amounts budgeted to be funded in advance for each Professional pursuant to the Budget.

B.    <u>Excluded Professional Fees</u>.  Notwithstanding anything to the contrary in this Final Order, neither the Carve-Out, nor the proceeds of any borrowings under the DIP Credit Agreement or DIP Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following:  (a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief:  (i) challenging the legality, validity, priority, perfection, or enforceability of the Pre-Petition Obligations, the Post-Petition Obligations, or the Pre-Petition Agent's, DIP Agent's respective liens on and security interests in any of the Pre-Petition Collateral or DIP Collateral, , as applicable, (ii) seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the Pre-Petition Obligations or Post-Petition Obligations or the Pre-Petition Agent's or DIP Agent's respective liens on and security interests in the Pre-Petition Collateral or the DIP Collateral, as applicable, or (iii) preventing, hindering or delaying the Pre-Petition Agent's or DIP Agent's respective assertion or enforcement of any lien, claim, right, or security interest or realization upon any Pre-Petition Collateral or DIP Collateral, as applicable, in accordance with the terms and conditions of this Final Order, (b) a request to use the Cash Collateral (as such term is defined in Bankruptcy Code section 363) without the prior written consent of the Pre-Petition Agent and the DIP Agent, except to the extent expressly permitted herein, (c) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), other than from the DIP Secured Parties, without the prior written consent of the DIP Agent unless such other debtor-in-possession financing or financial accommodation is used, in part, to indefeasibly pay and satisfy in full all

Pre-Petition Obligations and Post-Petition Obligations owed respectively to the Pre-Petition Secured Parties and DIP Secured Parties, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action, or defenses against the Pre-Petition Secured Parties or the DIP Secured Parties, each in their respective capacities as such, or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors, or assigns, including, without limitation, any attempt to avoid any claim, lien, or interest of, or obtain any recovery from any of the Pre-Petition Secured Parties or the DIP Secured Parties, under Chapter 5 of the Bankruptcy Code; provided, however, that, subject to the Carve-Out Cap, an amount not to exceed $50,000.00 in the aggregate of the indebtedness incurred pursuant to the DIP Facility may be used to pay the Allowed Professional Fees of the Committee to investigate (but not prosecute) claims against and possible objections with respect to the Pre-Petition Obligations, and the pre-petition liens and security interests of, the Pre-Petition Secured Parties (including, without limitation, issues regarding validity, perfection, priority, or enforceability of the secured claims of the Pre-Petition Secured Parties).

      C.      <u>Carve-Out Reserve</u>.  At the DIP Agent's sole discretion, the DIP Agent may at any time establish (and adjust) a reserve against the amount of Revolving Advances or other credit accommodations that would otherwise be made available to the Debtors in respect of the Carve-Out, provided, however, that the setting (or adjustment) of any such reserve shall not diminish the Carve-Out Cap.  Nothing contained herein shall limit, modify, or restrict in any way the DIP Agent's rights to establish (and adjust) any other reserves in accordance with the DIP Financing Documents.

      D.      <u>Payment of Carve-Out</u>.

      (1)      An account shall be maintained with Landis Rath & Cobb LLP ("**LRC**") for the payment of Allowed Professional Fees (the "**Carve-Out Reserve Account**") which

account shall be funded by or on behalf of the Debtors, including through borrowings under the DIP Credit Agreement, in accordance with the Approved Budget on a weekly basis, in advance, until the delivery of a Carve-Out Trigger Notice, provided that for this purpose borrowing availability must exist under the DIP Credit Agreement.  Upon the occurrence and during the continuance of an Event of Default, the Carve-Out Reserve Account may continue to be funded at the DIP Agent's option, up to the Carve-Out Cap.  From funds in the Carve-Out Reserve Account, LRC shall pay Allowed Professional Fees to the Professionals, as applicable, in compliance with the Interim Compensation Procedures and in the manner set forth in this Final Order in accordance with the Budget; provided, however, that, prior to payment in full of the Pre-Petition Obligations, as applicable, and Post-Petition Obligations and termination of the Carve-Out, to the extent that Allowed Professional Fees that have accrued from the Petition Date through and including the date a Carve-Out Trigger Notice is delivered are less than the amounts funded into the Carve-Out Reserve Account, the excess amounts in the Carve-Out Reserve Account shall be applied (a) first to fund the Post EOD Carve-Out Amount, and (b) second remitted to the DIP Agent to apply to reduce either or both the Pre-Petition Obligations and the Post-Petition Obligations at DIP Agent's sole discretion. For the avoidance of doubt, (a) in making payments from the Carve-Out Reserve Account, LRC shall be entitled to conclusively rely upon written certifications of each Professional as to the amount due and owing to such Professional from the Carve-Out Reserve Account and in accordance with the Budget and shall have no liability to any party based upon its reliance on such certifications; and (b) in no circumstances shall LRC be obligated to pay any Professional other than from funds held, from time to time, in the Carve-Out Reserve Account. Provided that the amounts DIP Agent is obligated to allocate to Professionals as required in this Section V has been funded, all obligations of the DIP Secured Parties and Pre-Petition Secured Parties with respect to the

Carve-Out shall be terminated.  Notwithstanding anything to the contrary contained in this Final Order, the Carve-Out and all obligations of the DIP Secured Parties and Pre-Petition Secured Parties with respect to the Carve-Out shall be terminated upon the payment in full and satisfaction of the Pre-Petition Obligations and the Post-Petition Obligations.

(2)    The Carve-Out Cap shall be reduced on a dollar-for-dollar basis on a weekly basis by the amounts actually funded into the Carve-Out Reserve Account.  To the extent the Carve-Out Reserve Account has not been funded in accordance with the Approved Budget prior to the delivery of a Carve-Out Trigger Notice, the DIP Agent, on behalf of the DIP Lenders, shall remit the difference to the Carve-Out Reserve Account solely from DIP Collateral proceeds.  Payment of any amounts on account of the Carve-Out, whether by or on behalf of the DIP Agent or any DIP Lender, shall not and shall not be deemed to reduce the Pre-Petition Obligations or the Post-Petition Obligations, and shall not and shall not be deemed to subordinate any of the DIP Secured Parties' liens and security interests in the DIP Collateral or the DIP Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.  No DIP Secured Party shall, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Cases or Successor Cases (as hereinafter defined) under any chapter of the Bankruptcy Code, and nothing in this Section V shall be construed to obligate any DIP Secured Party, in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

(3)    Nothing herein shall be construed as a consent to the allowance of the fees and expenses of any Professional or shall affect the right of the Pre-Petition Secured Parties or the DIP Secured Parties to object to the allowance and payment of such fees and expenses.  So long as no Event of Default has occurred or is continuing, the Debtors shall be permitted to pay

fees and expenses allowed and payable pursuant to an Order of the Bankruptcy Court, including any Order approving Interim Compensation Procedures, under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable, solely to the extent set forth in the Approved Budget and not to exceed the amounts set forth in the Approved Budget, provided that any such payment shall be subject to entry of a final order of the Bankruptcy Court of each Professional's final application for allowance of such fees and expenses.

VI.    **Right to Credit Bid**.  Pursuant to section 363(k) of the Bankruptcy Code, but subject to Section VIII below, in connection with any sale of assets by any Debtor outside of the ordinary course of business, the Pre-Petition Agent, on behalf of the Pre-Petition Lenders, and the DIP Agent, on behalf of the DIP Lenders, as the case may be, shall, in their respective sole and absolute discretion, be entitled to credit bid (independently or together) on account of their respective interests in the Pre-Petition Collateral and DIP Collateral,  all or any part of the outstanding amount of the Pre-Petition Obligations and/or Post-Petition Obligations, as applicable, in respect of any such sale.

VII.    **Default; Rights and Remedies; Relief from Stay**.

A.    <u>Events of Default</u>.  The following shall constitute an "Event of Default" under this Final Order:

(1)    The occurrence of any Event of Default as defined and under the DIP Credit Agreement.

(2)    The Bidding Procedures Order is not entered by the Bankruptcy Court on or before December 5, 2019.

(3)    the Approved 363 Sale Order is not entered by the Bankruptcy Court on or before December 20, 2019.

B.    <u>Rights and Remedies Upon Event of Default/Relief from Stay</u>.

(1)     Upon the occurrence of and during the continuance of an Event of Default, and without the necessity of seeking relief from the automatic stay or any further Order of the Bankruptcy Court (i) the DIP Agent and DIP Lenders shall no longer have any obligation to make any Advances (or otherwise extend credit) under the DIP Facility; (ii) all amounts outstanding under the DIP Financing Documents shall, at the option of the DIP Agent, be accelerated and become immediately due and payable; (iii) the DIP Agent shall have the right to issue the Carve Out Trigger Notice, (iv) the DIP Agent and the Pre-Petition Agent shall be entitled to immediately terminate the Debtors' right to use Cash Collateral, without further application or order of this Court, provided, however, that the Debtors shall have the right to use Cash Collateral to pay their weekly ordinary course payroll included in the Approved Budget through and including the date immediately following the date on which such Event of Default occurs, (v) the Debtors shall be bound by all post-default restrictions, prohibitions, and other terms as provided in this Final Order, the DIP Credit Agreement and the other DIP Financing Documents and the Pre-Petition Financing Documents, (vi) the DIP Agent shall be entitled to charge the default rate of interest under the DIP Credit Agreement and (vi) subject only to the notice requirement set forth in Section VII(B)(2) below, both the DIP Agent and the Pre-Petition Agent shall be entitled to take any other act or exercise any other right or remedy as provided in this Final Order, the DIP Financing Documents, the Pre-Petition Financing Documents, or applicable law, including, without limitation, setting off any Post-Petition Obligations or Pre-Petition Obligations with DIP Collateral, Pre-Petition Collateral or proceeds in the possession of any Pre-Petition Secured Party or DIP Lender, and enforcing any and all rights and remedies with respect to the DIP Collateral or Pre-Petition Collateral, as applicable.

(2)     Without further notice, application or order of this Court, upon the occurrence and during the continuance of an Event of Default, and after providing five (5)

business days' prior written notice thereof (which five (5) business days period only applies to the DIP Collateral enforcement remedies described below) to counsel for the Debtors, counsel for the Committee, and the U.S. Trustee, the DIP Agent for the benefit of itself and the DIP Lenders, and the Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Secured Parties, as applicable, shall be entitled to take any action and exercise all rights and remedies provided to them by this Final Order, the DIP Financing Documents or the Pre-Petition Financing Documents, or applicable law, unless otherwise ordered by this Court, as the DIP Agent or the Pre-Petition Agent, as applicable, may deem appropriate in their sole discretion to, among other things, proceed against and realize upon the DIP Collateral (including the Pre-Petition Collateral) or any other assets or properties of the Estates upon which the DIP Agent, for the benefit of itself and the DIP Lenders, and the Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Secured Parties, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible payment of all the Pre-Petition Obligations and Post-Petition Obligations.  Notwithstanding the foregoing or anything in Section VII(B)(1) above, DIP Agent may continue to apply proceeds received into the lockbox or collection account to reduce the Post-Petition Obligations in any order at the sole discretion of the DIP Agent during such five (5) business days period.  During such five business days period, either or both the Debtors and the Committee shall be entitled to seek an emergency hearing with this Court.

Additionally, upon the occurrence and during the continuance of an Event of Default and the exercise by the DIP Agent or the Pre-Petition Agent of their respective rights and remedies under this Final Order, the DIP Financing Documents, or Pre-Petition Financing Documents, provided that the Debtors and the DIP Agent agree upon a mutually acceptable wind down budget, the Debtors shall cooperate with the DIP Agent in the exercise of rights and remedies and assist the DIP Agent in effecting any sale or other disposition of the DIP Collateral required

by the DIP Agent, including any sale of DIP Collateral pursuant to Bankruptcy Code section 363 or assumption and assignment of DIP Collateral consisting of contracts and leases pursuant to Bankruptcy Code section 365, in each case, upon such terms that are acceptable to the DIP Agent.

(3)    Upon the occurrence and during the continuance of an Event of Default, and subject to the five business days' notice provision provided above, in connection with a liquidation of any of the DIP Collateral, the DIP Agent (or any of its employees, agents, consultants, contractors, or other professionals) shall have the right, at the sole cost and expense of the Debtors, to: (i) enter upon, occupy, and use any real or personal property, fixtures, equipment, leasehold interests, or warehouse arrangements owned or leased by the Debtors; provided, however, the DIP Agent and Pre-Petition Agent may only be permitted to do so in accordance with (a) existing rights under applicable non-bankruptcy law, including, without limitation, applicable leases, (b) any pre-petition (and, if applicable, post-petition) landlord waivers or consents, or (c) further order of this Court on motion and notice appropriate under the circumstances; and (ii) upon entry of a Final Order, use any and all trademarks, tradenames, copyrights, licenses, patents, equipment or any other similar assets of the Debtors, or assets which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses, provided, however, DIP Agent may use such assets upon entry of this Final Order to the extent permitted by applicable non-bankruptcy law. The DIP Agent and the DIP Lenders will be responsible for the payment of any applicable fees, rentals, royalties, or other amounts owing to such lessor, licensor or owner of such property (other than the Debtors) for the period of time that the DIP Agent actually occupies any real property or uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals, or other amounts owing for any period prior to the date that the DIP Agent actually occupies or uses such

assets or properties).

(4)     The rights and remedies of the DIP Agent specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agent and/or Pre-Petition Agent may have under the DIP Financing Documents, Pre-Petition Financing Documents, or otherwise and may be exercised in whole or in part in any order.   The fourteen-day stay provisions of Bankruptcy Rules 6004(h) and 4001(a)(3) are hereby waived.

C.     <u>Relief from Stay</u>.   For the purpose of exercising rights, options and remedies set forth in this Section VIII, upon expiration of the five business-days period set forth in Section VII(B)(2), unless otherwise ordered by this Court, the Pre-Petition Agent, on behalf of the other Pre-Petition Secured Parties, and DIP Agent, on behalf of the other DIP Secured Parties, shall be automatically and completely relieved from the effect of any stay under Bankruptcy Code section 362, any other restriction on the enforcement of their liens upon and security interests in the DIP Collateral or any other rights granted to them, or any of them, pursuant to the terms and conditions of the DIP Financing Documents, the Pre-Petition Financing Documents or this Final Order.

D.     <u>Waiver Agreements</u>.   All rights, options, and remedies granted to the Pre-Petition Agent or DIP Agent in either or both of any landlord or warehouseman's waiver and/or consent executed and delivered in connection with the Pre-Petition Obligations and Pre-Petition Credit Agreement, including the right to access any premises leased by Debtors and access the Pre-Petition Collateral, shall be deemed to be continuing, enforceable and applicable to and binding upon the landlords and other parties to such waiver or consent agreements with respect to the Pre-Petition Collateral and DIP Collateral.

**VIII.    Challenges to Pre-Petition Obligations.**

A.     The Debtors have admitted, stipulated, and agreed to the various stipulations and

admissions contained in this Final Order, including, without limitation, the stipulations and admissions included in paragraph D of the Findings of Fact and Conclusions of Law (the "**Paragraph D Stipulations**"), which stipulations and admissions are and shall be binding upon the Debtors and any successors thereto (other than with respect to a successor Trustee appointed before the expiration of the Initial Challenge Period, which successor Trustee shall be bound by the Paragraph D Stipulations upon expiration of the Challenge Period, as provided in this paragraph) in all circumstances; provided, that the Paragraph D Stipulations shall not be binding on the Debtors and any successors thereto in the event the Committee is granted standing, derivatively or otherwise, but subject in all respects to the terms and provisions of this Section VIII, including the provisions relating to the Initial Challenge Period set forth below. The stipulations and admissions contained in this Final Order, including without limitation, the Paragraph D Stipulations, shall also be binding upon the Debtors, the Estates and all other parties in interest, including the Committee or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "**Trustee**"), for all purposes unless (a) (i) any party in interest other than the Committee, no later than the date that is seventy five (75) days from entry of the Interim Order, and (ii) the Committee, no later than sixty (60) days from the appointment of the Committee, unless such deadline has been extended in writing by the Pre-Petition Agent  (as applicable for clauses (i) and (ii), the "**Initial Challenge Period**") has properly filed an adversary proceeding as required under the Bankruptcy Rules (x) challenging the amount, validity, enforceability, priority or extent of the Pre-Petition Obligations, the liens of the Pre-Petition Agent on the Pre-Petition Collateral securing the Pre-Petition Obligations or (y) otherwise asserting any other claims, counterclaims, causes of action, objections, contests or defenses against the Pre-Petition Agent and/or any other Pre-Petition Secured Party with respect

      B.        to the Pre-Petition Obligations on behalf of the Estates ((x) and (y), collectively,

referred to herein as "**Challenges**"), and (b) this Court rules in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; *provided that*, as to the Debtors, all such Challenges are hereby irrevocably waived and relinquished effective as of the Petition Date; provided, further, that the irrevocable waiver and release by the Debtors as of the Petition Date shall not preclude the Committee from seeking standing, derivatively or otherwise, to commence a Challenge, but subject in all respects to the terms and provisions of this Section VIII. If during the Initial Challenge Period, the Committee or other third party files a motion for standing, derivatively or otherwise, with a draft complaint identifying and describing all Challenge(s) consistent with applicable law and rules of procedure, the Initial Challenge Period will be tolled for the Committee or other third party solely with respect to the Challenge(s) asserted in the draft complaint until three (3) business days from the entry of an order granting the motion for standing to prosecute such Challenge(s) described in the draft complaint and permitted by this Court (the "**Extended Challenge Period**", together with the Initial Challenge Period, the "**Challenge Period**"). If standing is denied by this Court, the Challenge Period shall be deemed to have expired.  If no such Challenge or motion for standing, as applicable, is timely filed prior to the expiration of the Initial Challenge Period, without further order of this Court:   (1) the Debtors' stipulations, admissions and releases contained in this Final Order (including the Paragraph D Stipulations and the releases set forth in Section IX(B) below) shall be binding on all parties in interest, including the Debtors, the Estates, the Committee, and any subsequently appointed Trustee, case fiduciary, or successors and assigns; (2) the Pre-Petition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in these Cases and any subsequent chapter 7 case; (3) the Pre-Petition Agent's liens on the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid,

binding, perfected, and with the priority specified in the Paragraph D Stipulations, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (4) the Pre-Petition Obligations, the Pre-Petition Secured Parties' liens on the Pre-Petition Collateral, as applicable; and the Pre-Petition Secured Parties (and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors) shall not be subject to any other or further challenge by the Committee or any other party in interest, and the Committee or party in interest shall be enjoined from seeking to exercise the rights of the Debtors or the Estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Initial Challenge Period); *provided* that if the Cases are converted to chapter 7 or a Trustee is appointed prior to the expiration of the Initial Challenge Period, any such estate representative or Trustee shall receive the full benefit of the later of (a) the expiration of the Initial Challenge Period and (b) thirty (30) days from the appointment of such estate representative or Trustee, subject to the limitations described herein. If any Challenge or motion for standing, as applicable, is timely and properly filed prior to the expiration of the Initial Challenge Period, the releases, stipulations and admissions contained in this Final Order, including without limitation, in the Paragraph D Stipulations, of this Final Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Committee and any other person, including any Trustee appointed in any Case(s) or any subsequently converted bankruptcy case(s) of any Debtors (collectively, the "**Successor Cases**"), as applicable, except as to any such findings and admissions that were expressly challenged in the original complaint initiating the adversary proceeding and excluding any amended or additional claims that may or could have been asserted thereafter through an amended complaint under FRCP 15 or otherwise. Nothing in this Final Order vests or confers on any person,

including any Committee, any Trustee, or any other party in interest, standing or authority to pursue any cause of action belonging to the Debtors or the Estates. This stipulation shall be binding upon the Debtors, the Estates, all parties in interest in the Cases and their respective successors and assigns, including any Trustee or other fiduciary appointed in the Cases or Successor Cases and shall inure to the benefit of the Pre-Petition Secured Parties and the Debtors and their respective successors and assigns. For the avoidance of doubt, Challenges may be filed against one or more of the Pre-Petition Secured Parties without filing Challenges against each of the other parties and likewise the Challenge Period may expire as to some but not all of the Pre-Petition Secured Parties if a Challenge is filed against one or more of the Pre-Petition Secured Parties but not all of them.

## IX.    **Debtors' Waivers and Releases**.

A.    <u>Section 506(c) Claims and 552(b) Equities</u>.    No costs or expenses of administration which have been or may be incurred in the Cases or Successor Cases at any time shall be charged against any of the Pre-Petition Secured Parties or the DIP Secured Parties their respective claims or the DIP Collateral,  Pre-Petition Collateral, as applicable, pursuant to Bankruptcy Code section 506(c) without the prior written consent of the DIP Agent (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender).  The Pre-Petition Secured Parties and DIP Lenders shall each be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Pre-Petition Secured Parties and DIP Lenders with respect to proceeds, products, offspring or profits of any of the Pre-Petition Collateral or DIP Collateral, as applicable, *provided however,* to the extent rent ("**Stub Rent**") for the period from the Petition Date through November 30, 2019 or such shorter period as the Court orders based on an earlier lease rejection (collectively, the "**Stub Rent Period**"),

owed to the landlords of locations that operated on a post-petition basis (each a "**Landlord**" and collectively, the "**Landlords**") is not paid by the Debtors in accordance with the Approved Budget, the Debtors shall retain their right, if any, to assert that such Stub Rent should be paid from the Collateral of the DIP Lenders and the Pre-Petition Lenders, and the Debtors, the Pre-Petition Agent and the DIP Agent shall retain their respective rights to object to any such assertion. The Pre-Petition Secured Parties and DIP Lenders shall each be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Pre-Petition Secured Parties and DIP Lenders with respect to proceeds, products, offspring or profits of any of the Pre-Petition Collateral or DIP Collateral, as applicable.

B.    <u>Release</u>.

(1)    In consideration of and as a condition to the DIP Agent and the DIP Lenders making Advances, the consent of the DIP Lenders, the DIP Agent, the Pre-Petition Agent, and the Pre-Petition Lenders consent to use of Cash Collateral and providing other credit and financial accommodations to the Debtors pursuant to the provisions of this Final Order and the DIP Financing Documents, each Debtor, on behalf of itself, and successors and assigns and such Debtor's Estate (collectively, "**Releasors**"), subject only to Section VIII above, including the right of the Committee to seek standing, derivatively or otherwise, on behalf of the Debtors' Estates, hereby absolutely releases and forever discharges and acquits (i) each Pre-Petition Secured Party, including the Pre-Petition Agent, (ii) the respective successors, participants, and assigns of each Pre-Petition Secured Party, (iii) the present and former shareholders, affiliates, subsidiaries, divisions, and predecessors of each Pre-Petition Secured Parties, and (iv) the directors, officers, attorneys, employees, and other representatives of the parties identified in clauses (i) through (iii) but solely in their capacity as such and not in any other capacity (the

parties identified in clauses (i) through (iv) being hereinafter referred to collectively as "**Releasees**") of and from any and all claims, demands, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, cross claims, defenses, rights of set-off, demands, and liabilities whatsoever (individually, a "**Pre-Petition Released Claim**" and collectively, "**Pre-Petition Released Claims**") of every kind, name, nature and description, known or unknown, foreseen or unforeseen, matured or contingent, liquidated or unliquidated, primary or secondary, suspected or unsuspected, both at law and in equity, which, including, without limitation, any so-called "lender liability" claims or defenses, that any Releasor may now or hereafter own, hold, have, or claim to have against Releasees, or any of them for, upon, or by reason of any nature, cause, or thing whatsoever which arose or may have arisen at any time on or prior to the date of this Final Order, in respect of the Debtors, the Pre-Petition Obligations, the Pre-Petition Financing Documents, and any Advances, Letters of Credit, or other financial accommodations under the Pre-Petition Financing Documents; provided that such release shall not be effective with respect to the Estates, until the expiration of the Challenge Period.  In addition, upon the indefeasible payment in full of all Obligations (as defined in the DIP Credit Agreement) owed to the DIP Agent and the DIP Lenders by the Debtors and termination of the rights and obligations arising under this Final Order and the DIP Financing Documents (which payment and termination shall be on terms and conditions acceptable to the DIP Agent), the DIP Agent and the DIP Lenders shall be automatically deemed absolutely and forever released and discharged from any and all obligations, liabilities, actions, duties, responsibilities, commitments, claims and causes of action arising or occurring in connection with or related to the DIP Financing Documents or this Final Order (whether known or unknown, direct or indirect, matured or contingent, foreseen or unforeseen, due or not due, primary or

secondary, liquidated or unliquidated).

(2)     Subject to Section VIII with respect to all applicable parties other than the Debtors, each Releasor hereby absolutely, unconditionally and irrevocably, covenants and agrees with each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Pre-Petition Released Claim released and discharged by each Releasor pursuant to Section IX(B)(1) above and provided further, however, that nothing in the Interim Order or this Final Order shall release or be deemed to release the Pre-Petition Agent or the Lenders (as defined in the Pre-Petition Credit Agreement) from any obligation under section 10 of that certain Forbearance and Sale Support Agreement dated as of June 21, 2019.

(3)     If any Releasor violates the forgoing covenant, Debtors agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

## X.     **Other Rights and Obligations**.

A.     No Modification or Stay of this Final Order.  Based upon the record presented to this Court by the Debtors, notwithstanding any reversal or modification on appeal of the authorization to obtain credit or incur debt, or of a grant of a priority or lien under this Final Order, the DIP Financing Documents or any term hereunder or thereunder, the DIP Agent and the DIP Lenders shall retain and be entitled to all of the rights, remedies, privileges, and benefits in favor of the DIP Agent and the DIP Lenders pursuant to Bankruptcy Code section 364(e). Further, the liens, claims, rights, remedies, privileges, and benefits granted herein shall not be affected by Debtors' failure to obtain a Final Order pursuant to Bankruptcy Rule 400l(c)(2).

B.     Power to Waive Rights; Duties to Third Parties.  The Pre-Petition Secured Parties and DIP Lenders shall have the right, in their respective sole discretion, to waive any of the

terms, rights and remedies provided or acknowledged in this Final Order ("**Lender Rights**") with respect to each of them, as applicable, and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s).  Any waiver by any of them of any Lender Rights shall apply solely to such party and to the Lender Right so waived and shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to any Pre-Petition Secured Party or any DIP Lender.

C.    Disposition of Collateral.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without an order of this Court and the written consent of the DIP Agent, except for sales of the Debtors' inventory in the ordinary course of their business or as otherwise permitted in the DIP Credit Agreement.

D.    Inventory.  The Debtors shall not, without the prior written consent of the DIP Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender), (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of Bankruptcy Code section 546, or (b) consent to any creditor exercising any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Bankruptcy Code section 553(b)(l) or otherwise.

E.    PACA Rights and Claims.  Nothing in this Order shall be deemed to prime or otherwise modify any rights or claims arising under the trust provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, et seq. ("PACA").  All rights and claims arising under PACA are expressly preserved, including any and all rights to object to any sale of the

Debtors' assets in the event that there are not sufficient funds to pay in full any claim arising under the trust provision of the PACA, 7 U.S.C. 499e(c)(2).

F.    <u>Certain Tax Liens</u>.  Nothing in this order or any prior order shall be construed to grant or acknowledge liens and/or claims that prime Denton County's, Dallas County's, Bexar County's, Harris County's and Tarrant County's (collectively, the "**Tax Authorities**") prepetition and postpetition liens and claims or to grant any other creditor a superior interest in or right to payment from the proceeds of the sale of the Tax Authorities' collateral to the extent that such tax liens are valid, senior, perfected and unavoidable pursuant to Texas Law.  All parties' rights to object to the priority, validity, amount and extent of the claims and liens asserted by the Tax Authorities are fully preserved. Nothing in this Final Order or any prior order shall be construed to grant any other creditor a superior interest in or right to payment from the proceeds of the sale of the Tax Authorities' collateral.  In the event of a default, counsel for the DIP Agent will include counsel for the Tax Authorities in its notice of default.

G.    <u>Denton County Adequate Assurance</u>.  From the proceeds of the sale of any of the Debtors' assets located in the state of Texas, the amount of $11,909.21 shall be set aside by the Debtors in a segregated account as adequate protection for the asserted secured claims of Denton County prior to the distribution of any proceeds to any other creditor.  The liens of Denton County, if any, shall attach to these proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtors. These funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Denton County, nor a cap on the amounts they may be entitled to receive.

H.    <u>Reservation of Rights</u>.  The terms, conditions and provisions of this Final Order are in addition to and without prejudice to the rights of the Pre-Petition Secured Parties or the DIP Lenders (except as such rights and remedies are expressly limited by the Final Order) to

pursue any and all rights and remedies under the Bankruptcy Code, the DIP Financing Documents, the Pre-Petition Financing Documents, or any other applicable agreement or law, including, without limitation, rights to seek either or both adequate protection and additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for either or both allowance and payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

I.    <u>Modification of the Automatic Stay</u>.  The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order and the DIP Financing Documents, including without limitation the application of collections, authorization to make payments, granting of liens, and perfection of liens.

J.    <u>Binding Effect</u>.

(1)    The provisions of this Final Order, the DIP Financing Documents, the DIP Superpriority Claim, DIP Liens, First Lien Adequate Protection Liens, First Lien Adequate Protection Claims, and any and all rights, remedies, privileges and benefits in favor of the DIP Agent, the DIP Lenders or the Pre-Petition Secured Parties, provided or acknowledged in this Final Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Final Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including, without limitation, any order which may be entered confirming any plan of reorganization, converting one or more of the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

(2)    In accordance with Bankruptcy Code sections 105 and 349, the DIP Agent's, the DIP Lenders', and the Pre-Petition Secured Parties, respective, liens on and security

interests in the DIP Collateral shall continue in full force and effect notwithstanding any order dismissing one or more of the Cases under Bankruptcy Code section 1112 or otherwise, until the Pre-Petition Obligations and Post-Petition Obligations, as applicable, owed to such parties, respectively, are indefeasibly paid and satisfied in full. This Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claim, DIP Liens, First Lien Adequate Protection Liens, and First Lien Adequate Protection Claims of the DIP Agent and the DIP Lenders in the DIP Collateral.

(3)     This Final Order shall be binding upon the Debtors, the Estates, all parties in interest in the Cases and their respective successors and assigns, including any Trustee or other fiduciary appointed in the Cases or any Successor Cases of any Debtors and shall inure to the benefit of the Pre-Petition Secured Parties, the DIP Lenders, the Debtors, and their respective successors and assigns, subject to the rights of any Trustee pursuant to Section VIII above.

K.     <u>Marshalling</u>.  In no event shall the DIP Agent, the DIP Lenders, or the Pre-Petition Secured Parties be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Pre-Petition Collateral or the DIP Collateral.

L.     <u>Proofs of Claim</u>. Notwithstanding the entry of an order establishing a bar date in any of these Cases, or the conversion of these Cases to a case under chapter 7 of the Bankruptcy Code and the Pre-Petition Secured Parties shall not be required to file proofs of claim in any of the Cases or Successor Cases with respect to any of the Pre-Petition Obligations, Adequate Protection Obligations, Adequate Protection Liens, Post-Petition Obligations, DIP Liens, DIP Superpriority Claim, or any other claims or liens granted hereunder or created hereby. The Pre-Petition Agent, for the benefit of the other Pre-Petition Secured Parties is hereby authorized and entitled, in its respective sole and absolute discretion, but in no event is required, to file (and

amend and/or supplement, as it sees fit) proofs of claim in each of the Cases on behalf of (x) all of the Pre-Petition Secured Parties in respect of the Pre-Petition Obligations. Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Pre-Petition Secured Parties. Any order entered by the Bankruptcy Court in relation to the establishment of a bar date in any of the Cases will so provide.

M.  Waiver of Bankruptcy Rule 6004(a) and 6004(h). The notice requirements of Bankruptcy Rule 6004(a) and the 14-day stay of 6004(h) are hereby waived.

N.  Order Controls. Unless this Final Order specifically provides otherwise, in the event of a conflict between (a) the terms and provisions of the DIP Financing Documents or the Pre-Petition Financing Documents, as applicable, or (b) the terms and provisions of this Final Order, then in each case the terms and provisions of this Final Order shall govern.

O.  No Third Party Rights. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

P.  Objections Overruled. All objections to the entry of this Final Order are, to the extent not resolved or withdrawn, hereby overruled.

**Dated: December 5th, 2019**
**Wilmington, Delaware**

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**